UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      No. 25-03

JOEL MAGEE                                  SECTION: "J"


**ORDER & REASONS**

Before the Court are a *Motion to Suppress Evidence and Fruits Seized on November 7, 2024* **(Rec. Doc. 41)** and a *Motion to Suppress Statements on November 7, 2024* **(Rec. Doc. 42)** filed by Defendant Joel Magee. The Government filed oppositions to each motion. (Rec. Doc. 49; Rec. Doc. 50). Magee filed replies. (Rec. Doc. 51; Rec. Doc. 52). The Court also held a hearing on the motions, wherein the Court instructed the parties to file supplemental briefing. (Rec. Doc. 54). Both sides have filed their supplemental briefing, which is now before the Court. (Rec. Doc. 58, Rec. Doc. 59; Rec. Doc. 61-2). Having considered the motions, the legal memoranda, the record, and the applicable law, the Court finds that Magee's motion to suppress evidence should be **GRANTED in part** and **DENIED in part**, while Magee's motion to suppress his statements should be **DENIED**.

**FACTS AND PROCEDURAL BACKGROUND**

During October 2024, Officer Nicholas Hairston became aware of an Instagram account marketing the sale of Marijuana and tapentadol in the New Orleans area to the account's Instagram followers. The moniker for the account was listed as "_sigg.eight." (Rec. Doc. 50-2, at 3). Most of the photographs on the account depicted the same Black male. After comparing these photographs to prior booking photographs, Officer Hairston was able to identify the male as Defendant Joel Magee. Officer Hairston concluded that, based on these photographs, Magee was the account's primary user.

On October 7, 2024, the user posted vegetable matter to their Instagram story, which Officer Hairston immediately recognized as Marijuana. The user then made another post advertising the prices for various quantities of Marijuana. The user further indicated that they were delivering Marijuana.

On October 11, Officer Hairston claims that Magee posted to his Instagram story a video of him clutching a pound sized block of Marijuana. After this, the user again posted prices for various quantities of Marijuana. The post also included a New Orleans, Louisiana geotag, indicating that the user was operating in the New Orleans area.

On October 12, the user made another post to their story, advising the account's followers that it "[g]ot bags in the city . . . Nice ones too and I ain't taxing. Get up wit [sic] me and make your situation better." (Rec. Doc. 50-2, at 10). The user included three green "tree" emojis within the text and eleven "bowl" emojis

2

underneath the text, along with three pound signs "###'s", indicating that they had multiple pounds of Marijuana available for sale. *Id.*

On October 15, the user posted a picture of a Black individual consistent with Magee's profile in the driver's seat of a vehicle possessing what appears to be an AR-style rifle. Officer Hairston was able to identify the steering wheel of the vehicle as that of a newer Acura model vehicle. A review of the Office of Motor Vehicle records indicated that Joel Magee's registered vehicle is a 2021 White Acura TLX with a registered address of 2335 Painters Street, New Orleans, Louisiana. Officer Hairston reviewed Magee's criminal history, which revealed that Magee had been arrested on multiple occasions for possessing firearms or Marijuana.

Officer Hairston then secured a search warrant for the _sigg.eight Instagram account. Upon reviewing the Instagram account and relying on his experience as a narcotics investigator, Officer Hairston concluded that Magee was also using his Instagram account to sell tapentadol pills.

On October 16, Officer Hairston observed Magee's vehicle parked at the Painters Street residence. Officer Hairston then secured a GPS tracking warrant for Magee's vehicle and tracked Magee over the following weeks.

On November 5, Officer Hairston secured a search warrant for the Painters Street residence. Two days later, Officer Hairston secured a search warrant for Magee's vehicle. That same day, officers located and cuffed Magee at a gas station in New Orleans. Officer Hairston advised Magee of his *Miranda* rights, and Magee

acknowledged that he understood those rights. Officer Hairston then placed Magee in the back of the police vehicle.

Officers then relocated to 2335 Painters Street, with Magee, to execute the residential search warrant. *Id.* Prior to conducting the search, Officer Hairston conversed with Magee, and Magee admitted that there was one firearm inside of his car and four firearms inside of the residence that he was storing for family members. Magee also admitted to another officer that his DNA may be found on the weapons because he would move the guns around the residence.

Inside the residence, officers found tapendatol tablets, guns, ammo, auto-sear devices, and cash. Officers then brought Magee to the police station. That same day, officers executed the search warrant for Magee's vehicle and recovered another gun, more pills, more cash, and a balaclava. Ultimately, during the execution of both search warrants, officers recovered 1,329 tapentadol pills, $50,657 in cash, five firearms, and three auto-sear devices.

Back at the station, Officer Hairston placed Magee inside an interview room. Officer Hairston then advised Magee of his *Miranda* rights a second time. Magee acknowledged that he understood those rights, and he then signed a written waiver of his *Miranda* rights.

After signing the waiver, Magee admitted to selling tapentadol pills to financially support his habit of consuming them. Magee also stated that his DNA would be found on the firearms found inside the residence and the vehicle because he

moved them for family members. Magee also acknowledged that his friend nicknamed him "Sigg" because his first handgun was a Sig-Sauer.

Magee was subsequently charged in a four-count indictment with (1) possessing tapentadol with an intent to distribute it, (2) possessing firearms in furtherance of a drug trafficking crime, (3) possessing firearms as a convicted felon, and (4) possessing a machine gun. (Rec. Doc. 1)

Magee now challenges the admissibility of the evidence seized by officers when they searched the residence and Magee's vehicle. Magee also seeks to suppress any statements he made to officers following his detainment and arrest.

## LEGAL STANDARD

In a motion to suppress evidence, the defendant bears the burden of making specific factual allegations of illegality, producing evidence, and persuading the court that evidence should be suppressed. *United States v. John Rockwell*, No. 07-128, 2007 WL 2122432, at *1 (E.D. La. July 19, 2007) (citing *United States v. Evans*, 572 F.2d 455, 486 (5th Cir. 1978)). The Fifth Circuit utilizes a two-step process to evaluate a defendant's motion to suppress when a search warrant is involved. First, the court must decide whether the *Leon* good faith exception to the exclusionary rule applies. *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) (citing *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)). The *Leon* good faith exception provides that evidence is admissible when it is obtained by law enforcement officials acting in objectively reasonable good faith reliance upon a search warrant, even if the

5

affidavit on which the warrant was based was insufficient to establish probable cause. *United States v. Leon*, 468 U.S. 897, 922-23 (1984); *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). "'[A] warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (citing *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)).

The court's analysis ends if the good faith exception applies. *Moore*, 805 F.3d at 593. If the good faith exception does not apply, then the court proceeds to the second step and determines "whether the affidavit established probable cause that the evidence to be seized would be found in the place to be searched, justifying the issuance of the warrant." *Id.* (citing *United States v. Aguirre*, 664 F.3d 606, 613-13 (5th Cir. 2011)); *see also United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004). "Probable cause may be established through 'direct observation' or 'normal inferences as to where the articles sought would be located'" *Moore*, 805 F.3d at 593 (citing *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)).

Magee is also afforded Fifth Amendment protections. According to the Fifth Amendment, no person shall be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. When a criminal defendant's self-incriminating statements are produced through interrogation in the custody of law enforcement, there is a presumption that the statements were compelled and should be suppressed unless a *Miranda* warning was issued prior to the defendant making his statements. *Oregon v. Elstad*, 470 U.S. 298, 306–307, 105 S. Ct. 1285, 84 L.Ed.2d

6

222 (1985), *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

## PARTIES' ARGUMENTS AND DISCUSSION

"The good faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *Leon*, 468 U.S. at 922 n.23) (internal quotations omitted). "The court may examine all of the circumstances surrounding the issuance of the warrant." *Id.* (internal quotations and citation omitted). "'[A] warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (citing *Ross*, 456 U.S. at 823 n.32). Thus, "[w]hen a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992) (citations omitted). A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* There are four exceptions to the good-faith doctrine:

(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth;

(2) Where the issuing magistrate/judge wholly abandoned his or her judicial role;

(3) Where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

7

(4) Where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*United States v. Preston*, No. 15-30351, 2016 WL 4245450, at *5 (5th Cir. Aug. 10, 2016) (citing *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992)); *United States v. Rojas-Alvarez*, 451 F.3d 320, 330 (5th Cir. 2006).

## I.     Search of the 2335 Painters Street Residence

Magee first seeks to suppress any items seized by police in their warrant-based search of the Painters Street residence (Rec. Doc. 41-1, at 8). Magee argues that the warrant was based on an affidavit so lacking in indicia of probable cause that it was unreasonable for the officers to rely on it. Specifically, Magee argues that there are insufficient facts in the affidavit to establish a nexus between the Painters Street residence and the items police sought.

### A. Whether the Affidavit is so Lacking in Indicia of Probable Cause as to Render Official Belief in its Existence Unreasonable

Magee contends that the affidavit does not explain how police came to believe that the social media account belonged to him or how Officer Hairston was able to identify Magee as the primary account user. Magee notes that none of the photographs in the affidavit that allegedly involve drugs or firearms include his face. Magee also argues that none of the photographs in the affidavit show drugs or firearms inside the Painters Street residence and that there are insufficient facts to believe that he resides there.

8

The Government argues that there is a sufficient nexus linking the evidence sought to the Painters Street residence. (Rec. Doc. 50, at 6). The Government contends that there are sufficient facts in the affidavit for the magistrate judge to believe that Magee was the primary user of his social media account. The Government also notes that, even though there are no photographs in the affidavit which include Magee's face, they all include a photograph of Magee in the top left corner as the poster and user of the account. The Government argues that one of Magee's posts include a geotag placing him in New Orleans. The Government argues that this information, combined with the facts that Magee registered his car at the Painters Street residence and that officers observed Magee's car parked in the driveway of the residence on one occasion, was sufficient for the magistrate judge to reasonably believe that Magee resides there.

The Fifth Circuit has consistently held that facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought. *Freeman*, 685 F.2d at 949 (citing *United States v. Green*, 634 F.2d 222 (5th Cir. 1981); *United States v. Gramlich*, 551 F.2d 1359 (5th Cir.), *cert denied*, 434 U.S. 866 (1977); *United States v. Maestas*, 546 F.2d 1177 (5th Cir. 1977); *United States v. Flanagan*, 423 F.2d 745 (5th Cir. 1970). Therefore, to determine whether the affidavit has sufficient indicia of probable cause to search the Painters Street residence, the Court must determine if the affidavit established a nexus between the house to be searched and the evidence sought, or whether the affidavit was merely "bare-bones," containing wholly conclusory statements. *See United States v. Nguyen*, 172 Fed.

Appx. 558, 561 (5th Cir. 2006); *Satterwhite*, 980 F.2d at 321. The nexus between the activity and the home may be established either through direct observation or through normal inferences as to where the articles sought would be located. *Id; see also United States v. Gallegos*, 239 Fed. Appx. 890, 895-96 (5th Cir. 2007) (citing *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996); *United States v. Pace*, 955 F.2d 270, 277 (5th Cir. 1992)). However, "[t]he affidavit need not contain information providing certainty that the objects sought will be found as a result of the search." *Freeman*, 685 F.2d at 949 (quoting *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977)). The facts in the affidavit need only persuade a man of reasonable caution to believe that the articles sought are located in the place to be searched. *Id*. The Fifth Circuit has noted that "few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *Payne*, 341 F.3d 393, 401 (5th Cir. 2003) (quoting *Green*, 634 F.2d at 226).

The Court first considers whether the affidavit provides sufficient information from which the magistrate judge could reasonably conclude that the Instagram account belonged to Magee and that Magee was the account's primary user. In the affidavit, Officer Hairston explains that "the same black male with dreadlocks" appeared in most of the photographs on the Instagram account. (Rec. Doc. 50-2, at 3). Officer Hairston then explains that he reviewed a photograph posted of said male on the account, compared it to one of Magee's booking photographs, and identified the person in the photograph as Magee. Officer Hairston then attached the booking photograph and the Instagram photograph to the affidavit.

10

Upon review of these images, the Court finds that the person in the Instagram photograph is identical to the person in the booking photograph. Further, in the top left corner of the photograph is a profile photograph associated with that account. That profile photograph also appears to be a photograph of Magee. Based on this information, the Court finds that it was objectively reasonable for the magistrate to conclude that the Instagram account belonged to Magee and that Magee was the account's primary user.

The Court next considers whether it was reasonable to link Magee to illegal drugs and firearms. The affidavit provides multiple photographs from the Instagram account which appear to be Marijuana and one photograph that depicts a person holding a firearm inside of a vehicle. And, while Magee is correct that none of the photographs in the affidavit show his face, all of the photographs were posted by the same account with the same profile photograph of Magee. Also, one of the photographs depict a Black individual consistent with Magee's profile holding a gun while sitting in the driver's seat of a vehicle. (Rec. Doc. 41-2, at 11). Within the frame is the vehicle's steering wheel, which Officer Hairston identified as matching the steering wheel of Magee's vehicle, a 2021 White Acura TLX. Officer Hairston also swears that Magee posted a video to his Instagram story that depicts Magee "clutching a pound sized block of Marijuana." (Rec. Doc. 50-2, at 7). Officer Hairston also provides multiple screenshots of posts on the Instagram account that provided prices for various quantities of Marijuana and indicated that the user was delivering the Marijuana. Taking all of this information into account, the Court finds that it was

reasonable to believe that Magee was illegally possessing a firearm as a convicted felon and was selling and distributing drugs.

The Court next considers whether there was sufficient information in the affidavit for the magistrate to reasonably believe that illegal drugs and firearms would be found at the Painters Street residence. The affidavit provides that the registered address associated with Magee's vehicle is 2335 Painters Street, New Orleans, Louisiana. The affidavit also provides that Officer Hairston observed Magee's vehicle parked in the driveway of the 2335 Painters Street residence on one occasion. The affidavit also includes a post from Magee's Instagram account, advertising various quantities of Marijuana for sale and a geotag location of New Orleans, Louisiana.

The Court finds that this information, without more, was insufficient for the magistrate to reasonably believe that drugs and firearms would be inside the Painters Street residence. First, the Court finds it questionable whether it was reasonable to believe that Magee resided at the Painters Street residence, as all the affidavit provides is that the officer observed Magee parked there on one occasion during the day, and that his vehicle was registered there. (Rec. Doc. 50-2, at 10–11). There is no additional information in the affidavit that links Magee to that address, such as an observation of Magee's car there overnight, or that Magee leased or owned the residence. Still, more importantly, the affidavit provides no information to suggest that firearms and illegal drugs would be found inside the Painters Street residence. The Fifth Circuit has found affidavits bare bones when they "provided no

12

information linking the [criminal] investigation to [the defendant's] residence. *United States v. Wilson*, 153 F.4th 478, 485 (5th Cir. 2025) (quoting *United States v. Brown*, 567 Fed. Appx. 272, 282 (5th Cir. 2014). Here "the affidavit offered nothing—no observation, no inferences, no corroborated tips—linking the" Painters Street residence to Magee's alleged drug operation. *Wilson*, 153 F.4th at 485.

The Court recognizes that "few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *Green*, 634 F.2d at 226. But that notion "does not provide carte blanche for searching a home when one is suspected of illegal activity." *Pace*, 955 F.2d at 277. Further, that inference applies to "inherently domestic personal papers and effects" like mail or passports but "not to all forms of evidence." *Wilson*, 153 F.4th at 486. Here it was not reasonable to assume that Magee was holding illegal drugs or firearms at 2335 Painters Street when there is nothing in the affidavit to suggest that he sold drugs out of the residence and nothing to suggest that he held firearms in that residence. None of the Instagram posts show drugs or firearms in the residence, and the police observed no potential drug deals at or near the residence. Further, the geotag suggesting that Magee was selling Marijuana in New Orleans does not automatically place him at the residence. Accordingly, the Court finds that the good faith exception does not apply to the search of the 2335 Painters Street residence.

In their supplemental briefing, the Government argues that the Court can look beyond the four corners of the affidavit to determine whether the good faith exception applies. (Rec. Doc. 59, at 6). The Government argues that, because a state magistrate

issued the warrant, the court is free to look beyond the four corners of the affidavit. *Id.* The Government cites three cases in support of this proposition. *Id.* (citing (*United States v. Ricks*, No.16-11, 2016 WL 7048282, (E.D. La. Dec. 5, 2016); *United States v. Payne*, 341 F.3d 402 (5th Cir. 2003); *United States v. Triplett*, 684 F.3d 500, 506 n.3 (5th Cir. 2012)). The Government posits that the additional information that Officer Hairston provided to the Court at the suppression hearing, though not supplied to the magistrate, can be used to establish probable cause for the warrant. (Rec. Doc. 59, at 6).

The Government is mistaken. A court may look to the "circumstances surrounding issuance of the warrant" to determine whether the good faith exception applies. *Payne*, 341 F.3d at 402. However, this rule does not permit a court to look beyond the information provided to the magistrate, particularly where, as here, the defendant argues that the affidavit is so lacking in indicia of probable cause as to render the search invalid. In that case, "the sole question is whether the **affidavit** . . . was so inadequate as to render official belief in the existence of probable cause entirely unreasonable." *United States v. Gant*, 759 F.2d 484, 488 (5th Cir. 1985) (emphasis added).

While narrow exceptions under state law permit courts to look beyond the four corners of the affidavit, that only applies when the information itself is supplied to the magistrate. *See Triplett*, 684 F.3d at 506–07 (finding that certain information provided at the suppression hearing was "irrelevant to probable cause" because it "was not included in [the officer's] affidavit, nor was the state magistrate orally

14

advised of it"). If the information was not supplied to the magistrate, it cannot be said that the magistrate relied on this information when he issued the warrant. *See Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention.") Accordingly, the Court will not save the deficient affidavit with Officer Hairston's suppression hearing testimony.

Having found that the good faith exception does not apply, the Court turns to whether probable cause supported the warrant. As the Fifth Circuit explained, "if the warrant and affidavit are 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' it necessarily follows that probable cause was absent." *Wilson*, 153 F.4th at 489. That was precisely the case here. Accordingly, the Court finds that the warrant was invalid, and that a subsequent search of the residence violated Magee's Fourth Amendment rights.

### B. Inevitable Discovery Doctrine

As a last resort, the Government argues that, even if the warrant was invalid, the items found in the residence are still admissible under the inevitable discovery doctrine. "The inevitable-discovery doctrine . . . provides that 'otherwise suppressible evidence will be admitted if that evidence would inevitably have been discovered by lawful means.'" *United States v. Walker*, 49 F.4th 903, 909 (5th Cir. 2022) (quoting *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010)) (brackets omitted). The inevitable discovery doctrine applies if the Government establishes "by a

preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct **and (2) that the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation**." *Id.* (quoting *Jackson*, 596 F.3d at 241) (emphasis added).

The Government argues that the items found in the residence would have eventually been discovered by lawful means. (Rec. Doc. 50, at 15). The Government argues that they had reasonable suspicion to detain Magee at the gas station, so that seizure was lawful. The Government continues that, once Magee was legally detained, he admitted that firearms were in the residence and that his DNA would be found on them. According to the Government, these admissions gave them probable cause to search the residence. The Government also argues that they were actively pursuing a substantial alternate line of investigation at the time of the constitutional violation because they were attempting to execute the original warrant and obtained an additional warrant for Magee's iPhone after searching the house. (Rec. Doc. 59, at 9).

Magee responds that the inevitable discovery doctrine cannot apply for two reasons. (Rec. Doc. 53-1, at 6–8). First, Magee argues that he was unlawfully detained. Magee argues that the police lacked reasonable suspicion to detain him at the gas station and that both search warrants were invalid. Second, Magee argues that the officers failed to take any additional steps to secure a new search warrant

16

after Magee told them that guns would be found in the residence and that he moved them for family members. *Id.*

The Court finds that the inevitable discovery doctrine does not apply to the items seized in the residence. The fact that the officers "likely had sufficient probable cause to obtain a search warrant for the residence cannot alone establish that the firearm would have been inevitably discovered." *United States v. Wells*, No. CR 24-206, 2025 WL 3750669, at *4 (E.D. La. Dec. 29, 2025) (Africk, J.); *see United States v. Cherry*, 759 F.2d 1196, 1206 (5th Cir. 1985); *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991) ("[A]vailability of a search warrant [does] not alone establish inevitable discovery." (emphasis omitted)). Rather, the Government must put forth some evidence that the officers tried to obtain a valid search warrant "at the time of the illegal search." *Wells*, 2025 WL 3750669 at *4 (quoting *United States v. Li*, No. 15-102, 2016 WL 5407874, at *6 (N.D. Miss. Sept. 16, 2016) (cleaned up).

Here, the officers likely had probable cause to search the residence once Magee admitted that there were firearms in the residence and that he had moved them for family members. However, the officers made no effort to obtain a valid search warrant for the residence after learning this new information. Instead, they immediately executed the invalid search warrant and secured the items inside the residence. Because the officers did not try to obtain a valid search warrant for the residence at the time of the illegal search, the Court cannot find that the inevitable discovery doctrine applies. Accordingly, the Court will suppress any items seized at the Painters Street residence.

17

## II.    Search of Magee's Vehicle

Magee also seeks to suppress any evidence found from the warrant-based search of his vehicle. (Rec. Doc. 41-1, at 10). Magee argues that there is an insufficient nexus linking illegal drugs or firearms to his vehicle. Specifically, Magee argues that the affidavit contains false statements, and that without these false statements, there is no probable cause to search his vehicle.

The Government disagrees. It argues that the information presented in the affidavit is truthful. The Government further contends that, even if the Court finds that certain information in the affidavit is not truthful, these false statements were not made deliberately or with reckless disregard for the truth.

The *Leon* good faith exception does not apply if a search warrant affidavit contains a false statement that was made intentionally or with reckless disregard for the truth. *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). The initial burden is on the defendant to prove that false information was given intentionally or with reckless disregard for the truth. *Id.* (citing *United States v. Wake*, 948 F.2d 1422, 1428-29 (5th Cir. 1991)). "If the defendant fails to meet his burden, or if the affidavit would have sufficiently provided probable cause without the false information, the warrant did not violate the Fourth Amendment, and the evidence should not have been excluded." *Id. Franks* has been extended to cover omissions of fact as well as affirmative misstatements of fact. *United States v. Barnes*, 126 F. Supp. 3d 735, 742 (E.D. La. 2015) (citing *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)). To prevail,

18

a defendant must demonstrate that "(1) the omission was knowingly and intentionally made or was made in reckless disregard for the truth and (2) the inclusion of the omitted information would render the affidavit insufficient to support a finding of probable cause." *Id.* (citing *United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991)).

Magee argues that the affidavit contains three material misstatements or omissions pertinent to the search of his vehicle. First, Magee argues that it "is suspicious" that the investigators omitted how they came to focus on Magee as the primary user of the "_sigg.eight" Instagram account. (Rec. Doc. 41-1, at 12). Second, he argues that the affidavit falsely claimed that he is currently on probationary status and that he could not possess firearms because of this status. *Id.* Third, Magee argues that the affidavit misrepresented his criminal history because it claims that he was arrested on October 1, 2024, when a firearm and Marijuana were found in his registered vehicle and that he committed offenses which resulted in "multiple seizures of Marijuana in addition to firearms." (Rec. Doc. 41-4, at 11). The Court will address each of these arguments in turn.

First, the Court has already determined that the affidavit adequately explains how Officer Hairston came to believe that Magee was the primary user and poster on the "_sigg.eight" Instagram account. Magee has not pointed out what additional information should have been included in this affidavit, nor has he proven that this information was knowingly or intentionally omitted or omitted with reckless disregard for the truth. Accordingly, the Court dismisses Magee's argument.

19

Second, while the affidavit may misrepresent Magee's probationary status, the Court does not find this misrepresentation would have affected the magistrate's decision to issue the warrant.  The full statement made in the affidavit provides: "[a] review of Joel Magee's computerized criminal history revealed that Joel Magee is a convicted felon, prohibited from possessing firearms due to his probationary status possession with intent to distribute Marijuana after a July 10th, 2018, conviction whereas Magee was sentenced to a three-year suspended sentence." (Rec. Doc. 41-4, at 10). While poorly worded, this statement still expresses that Magee is a convicted felon. Magee's conviction prohibits him from possessing a firearm under state law, and the magistrate acted reasonably in relying on this statement and additional evidence to find probable cause to believe that Magee violated that law. The Court does not find that this misstatement was made intentionally or with reckless disregard for the truth. Accordingly, the Court dismisses Magee's argument.

Third, the Court considers whether the affidavit makes a material misrepresentation concerning Magee's prior convictions.  The affidavit provides that

> [a] review of Joel Magee's criminal history has revealed multiple seizures of Marijuana in addition to firearms, that were confiscated from Magee's vehicle at the time. One example being, on October 1st, 2024, at about 5:07 pm, Magee was arrested for being in possession of a firearm in addition to individually packaged Marijuana appearing to be prepared for distribution, $2,587 in US Currency, and a digital scale, all found within Joel Magee's registered vehicle at the time.

(Rec. Doc. 50, at 13). Magee argues that he was not arrested on that date. (Rec. Doc. 41-1, at 12). The Government argues that, even though the October 1 arrest is not reflected in the computer printout of Magee's criminal history, it was still a true

statement, as evidenced by the very specific information in the affidavit regarding that arrest.

At the hearing, Officer Hairston admitted that he accidentally misrepresented the year of Magee's arrest. While the affidavit reflects that Magee was arrested on October 1, 2024, for possessing firearms and Marijuana, he was actually arrested on October 1, 2019, for that offense. Officer Hairston testified that this misrepresentation was unintentional, and the Court finds his testimony to be credible. Magee has not proven to this Court that this statement was made intentionally or with reckless disregard for the truth. Accordingly, the Court rejects this argument.

Magee next argues that the affidavit misrepresented that a review of Magee's criminal history revealed "multiple seizures of Marijuana in addition to firearms." (Rec. Doc. 41-4, at 11). According to Magee, this statement must be construed as stating that on multiple occasions the police have seized from Magee both Marijuana and firearms. Magee argues that this is a misrepresentation because he has had multiple arrests that resulted in seizures of either Marijuana or firearms, but only one arrest that involved the seizure of both Marijuana and firearms. (Rec. Doc. 41-1, at 12–13).

The Court rejects Magee's semantic argument for two reasons. First, the Court finds that this sentence could be reasonably and alternatively interpreted as stating that Magee's criminal history reveals multiple seizures of Marijuana and multiple seizures of firearms—which it does.

Second, even if the Court interprets this as a misrepresentation, Magee fails to convince this Court that this statement was made intentionally or with reckless disregard for the truth. Accordingly, the Court finds that none of these challenged statements invoke the *Leon* exception.

Even if the challenged statements were excluded, the Court finds ample information in the affidavit to support a search of Magee's vehicle. The affidavit provides a photograph of a Black individual consistent with Magee's profile sitting in the driver's seat and holding a firearm. While the photograph excludes the individuals face, the photograph was posted by the Instagram account "sigg.eight," which could reasonably be inferred as Joel Magee's Instagram account. Further, a portion of the steering wheel is included in the photograph, and this portion matches the steering wheel of Magee's registered vehicle. Thus, it was reasonable to assume that Magee is the individual holding the firearm inside of his vehicle. As a convicted felon, Magee is prohibited from possessing firearms, so the magistrate reasonably believed that Magee violated the law, and that a search of Magee's vehicle would likely reveal firearms.

Further, the affidavit attaches several posts from the account where the user advertised the sale of various quantities of Marijuana. In one such post, the user explained that they were "delivering," indicating that they are illegally transporting Marijuana to buyers. (Rec. Doc. 41-4, at 6). It was reasonable to infer that Magee would use his registered vehicle to deliver drugs. It was also reasonable to infer that Magee's vehicle would contain evidence of drug transactions. Thus, there is ample

22

information in the affidavit for the Court to find that the good faith exception applies to the warrant-based search of Magee's vehicle. Accordingly, the Court will not suppress any evidence seized from Magee's vehicle.

### III.   Magee's Statements

Magee also seeks to suppress certain statements that he gave law enforcement on the day of his November 7 arrest. (Rec. Doc. 42-1 at 1). Magee argues that these statements should be suppressed because officers violated his Fourth and Fifth Amendment rights.

Magee argues that his Fourth Amendment rights were violated because he was arrested at the gas station, and the police lacked probable cause for this arrest.

The Government responds that they merely detained Magee at the gas station. The Government contends that they needed only reasonable suspicion to detain him. The Government argues that they did not arrest Magee until he admitted that firearms were in the Painters Street residence and his vehicle, providing probable cause for his arrest.

Because the Court finds that there was probable cause to arrest Magee at the gas station, the Court will not discuss whether Magee was arrested or detained for Fourth Amendment purposes. The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrests made without probable cause. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to

conclude that the suspect had committed or was committing an offense." *Haggerty v. Texas Southern University*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn*, 242 F.3d at 313) (internal quotation marks omitted). This Court has held that probable cause means a "fair probability" that a crime has been committed. *See Fillios v. Harahan Police Department*, Civ. A. No. 19-45, 2019 WL 2009241 (E.D. La. May 7, 2019) (citing *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)) Although "the requisite 'fair probability' is something more than a bare suspicion, [it] need not reach the fifty percent mark." *Garcia*, 179 F.3d at 269.

At the time that Magee was seized at the gas station, there was probable cause to believe that he had committed a crime. The user of the Instagram account "sigg.eight" made multiple posts advertising the sale of Marijuana at various quantities and prices, and also advertised the sale of tapentadol. As discussed in the Court's prior analysis, it was reasonable to believe that Magee was the primary user and was responsible for making these posts. Officer Hairston claims that on one occasion Magee posted a video of himself holding a pound sized block of Marijuana and then listed prices and quantities for the Marijuana seven minutes after that post. The user also posted a picture of an individual holding a firearm inside a vehicle, and it was reasonable to assume that individual was Magee, a convicted felon prohibited from possessing firearms. After securing a search warrant for Magee's Instagram account, Officer Hairston found several messages between Magee and other Instagram users discussing various quantities and prices for the sale of opioids.

24

Based on the totality of the circumstances, the Court finds there to be a fair probability that Magee had committed a criminal offense.

Having found that Magee was not unlawfully seized, the Court now turns to whether Magee made any statements in violation of his Fifth Amendment rights. According to the Fifth Amendment, no person shall be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. When a criminal defendant's self-incriminating statements are produced through interrogation in the custody of law enforcement, there is a presumption that the statements were compelled and should be suppressed unless a *Miranda* warning was issued prior to the defendant making his statements. *Oregon v. Elstad*, 470 U.S. 298, 306–307, 105 S. Ct. 1285, 84 L.Ed.2d 222 (1985), *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). In this case, the Defendant argues that his Fifth Amendment and *Miranda* rights were violated in several custodial interrogations, and he invokes *Miranda's* exclusionary rule to preclude the Government from using his statements in its case in chief. There are shifting burdens in suppression hearings in deciding whether confessions should be suppressed. *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). The defendant must make "specific factual allegations of illegality," and it is his burden to show that he was under custodial interrogation when he made the admission at issue. *Id.* If that showing is met, it is the Government's ultimate burden to prove by a preponderance of the evidence that the statement was not illegally obtained. *Id.*

25

Two conditions must be met simultaneously for *Miranda's* protections to be triggered: custody and interrogation. *Minnesota v. Murphy*, 465 U.S. 420, 431, 104 S. Ct. 1136, 79 L.Ed.2d 409 (1984). Here there is no question that Magee was in custody and interrogated at the time he delivered his incriminating statements. The issue is whether he was properly advised of his *Miranda* rights, and whether he knowingly and voluntarily waived those rights prior to giving his statements.

A valid "waiver of *Miranda* rights must be (1) 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception' and (2) 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Briseño*, No. 23-10797, 2025 WL 619169, at *8 (5th Cir. Feb. 26, 2025) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In determining whether a waiver is valid, a court must consider "the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Edwards v. Arizona,* 451 U.S. 477, 482 (1981).

The Government contends that Officer Hairston advised Magee of his *Miranda* rights on two occasions: first, when officers seized Magee at the gas station; second, before his interview at the police station. The Government argues that Magee knowingly and voluntarily waived his rights on both occasions.

Magee seemingly contends that he was not advised of his *Miranda* rights when police initially seized him, and that he did not effectively waive his rights. So, he seeks to suppress any statements made to the police after being seized at the gas

station. Magee also argues that he was not properly advised of his *Miranda* rights in the police interrogation room. Magee alleges that the police engaged in a "two step" interrogation process that is forbidden under *Missouri v. Seibert*, 542 U.S. 600 (2004). (Rec. Doc. 42-1, at 10).

The Court will first consider whether Magee knowingly and voluntarily waived his *Miranda* rights at the gas station. Officer Hairston's bodycam footage of Magee's seizure at the gas station was not provided to the Court or the parties at the time that Magee filed his motions to suppress. However, at the suppression hearing, Officer Hairston revealed that he had recovered his bodycam footage, and that footage has now been provided to the Court and to the parties.

The video shows that Officer Hairston arrived with several officers to seize Magee at the gas station. (Officer Hairston Body Camera Video at 02:30–03:00 (E.D. La. Case No. 25-03) (on file with the Court). After cuffing Magee, Officer Hairston identified himself as a police officer and advised Magee of his *Miranda* rights while walking him to the police car. *Id.* at 03:00–3:25. Officer Hairston then immediately asked Magee if he understood those rights, and Magee verbally acknowledged that he understood. *Id.* Magee was thirty-two years old at the time of his arrest. Magee had been arrested on prior occasions and is a convicted felon, so he is undoubtedly familiar with his *Miranda* rights. Nothing in the video suggests that Magee did not understand his rights or that Magee was coerced or otherwise deceived into involuntarily waiving his rights. Magee has not argued that his waiver was unknowing or involuntary. Accordingly, the Court finds that Magee knowingly and

27

voluntarily waived his *Miranda* rights at the gas station. Any statements provided thereafter, including that there were guns inside the residence and Magee's vehicle, are therefore admissible.

The Court next considers whether Magee legally waived his rights at the police station. The Government provided a video of Magee's interrogation. Inside the interview room, Officer Hairston and Magee are sitting at a table with a written rights of arrestee form between them. (Video Recording of Magee's Formal Interview at 16:30 (E.D. La. Case No. 25-03) (on file with the Court). Prior to any questioning, Officer Hairston first explained to Magee that he is not asking him any personal questions and that he is not "telling on nobody" but that the police must first comply with the form, which is standard police procedure. *Id.* at 16:30–16:38. Officer Hairston then explained to Magee that he had been arrested for investigation to a crime concerning firearms and narcotics. *Id.* at 17:04–17:14. Officer Hairston then advised Magee of his *Miranda* rights. *Id.* at 17:14–17:32. While Officer Hairston spoke, Magee nodded his head and indicated that he understood. Magee did not appear confused or uncomprehending. After being advised of his rights, Magee nodded and then verbally acknowledged that he understood those rights. Magee, appearing eager to speak, then began conversing with Officer Hairston. *Id.* at 17:32–42. After a few minutes, Officer Hairston interrupted Magee and asked him to sign the rights of arrestee form, indicating that he had been advised of his rights. *Id.* at 20:03. Magee signed the form. *Id.* at 20:12–20:17. He then gave several incriminating statements. *Id.* at 20:20–1:37:13.

28

Magee argues that he was not clearly informed of his *Miranda* rights, but the Court disagrees. While Officer Hairston did downplay the significance of the interrogation, he still informed Magee that he was under arrest and then clearly explained his *Miranda* rights. Magee's nods, verbal acknowledgement, and apparent eagerness to share his story suggest that his waiver was both knowing and voluntary. Magee offers no evidence that he was not informed of his *Miranda* rights or that officers coerced him into providing his waiver. Based on the totality of the circumstances, the Court finds that Magee's waiver was knowing and voluntary.

The Court also disagrees with Magee's argument that the Government conducted a "two-step" interrogation process under *Seibert*. To apply *Seibert*, there must be a clear showing that law enforcement questioned Magee prior to advising him of his *Miranda* rights. *See Siebert*, 542 U.S. 616. The Court does not find that showing. Accordingly, the Court will not suppress Magee's statements.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Magee's *Motion to Suppress Evidence and Fruits Seized on November 7, 2024* **(Rec. Doc. 41)** is **GRANTED in part** and **DENIED in part** as follows. The Court will suppress any items seized at 2335 Painters Street, New Orleans, Louisiana. However, any items seized in Magee's 2021 White Acura TLX are admissible.

**IT IS FURTHER ORDERED** that Magee's *Motion to Suppress Statements on November 7, 2024* **(Rec. Doc. 42)** is **DENIED**.

New Orleans, Louisiana, this 16th day of April, 2026.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE